UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TYRONE GRANT BRISBOIS,<br><br>                  Petitioner,<br><br>   v.<br><br>TULALIP TRIBAL COURT, TONY ASTON, SNOHOMISH COUNTY JAIL,<br><br>                  Respondents. | CASE NO. 2:18-cv-01677-TSZ-BAT<br><br>**REPORT AND RECOMMENDATION** |

In his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus, Petitioner Tyrone Grant Brisbois seeks relief from a November 28, 2017 commitment order imposed by the Tulalip Tribal Court at his probation revocation hearing. At the time he filed his federal petition, Petitioner claimed he was being held unlawfully because he had not been informed of his due process right to counsel and was forced to appear *pro se* at his revocation hearing. Dkt. 3, p. 3.

Respondents Snohomish County Jail and Tulalip Tribal Court[1] contend the petition should be denied because Petitioner is no longer in custody (and cannot show any negative collateral impact of his ordered commitment); he failed to exhaust all available legal remedies; and the § 2241 federal writ does not extend to Petitioner because he was held in custody pursuant

---

[1] Respondent Tony Aston is named as a party because the Tulalip Tribes contracts with Snohomish County for jail services and Petitioner was incarcerated at Snohomish County Jail as a result of a Tulalip Tribal Court order. Dkt. 10, Declaration of Anthony Aston, ¶¶ 3-4.

REPORT AND RECOMMENDATION
Page 1

to a Tribal Court order. Dkts. 9 and 11. The undersigned agrees that the petition should be denied for these reasons.

## STATEMENT OF FACTS

On June 3, 2014, Petitioner entered a plea of guilty to one count of felony Violation of a Protection Order in Tulalip Tribal Court under Tulalip Tribal Court cause number TUL-CR-DV-2014-0643. Petitioner is a member of the Tulalip Indian Tribe and the offense to which he plead guilty occurred against another member within the boundaries of the Tulalip Reservation. Judgment and Sentence was entered by Hon. Judge Lisa Atkinson on that same date. Petitioner was sentenced to 1095 days in jail, with 850 of those days suspended on a variety of conditions. Dkt. 11, Exh. A. He spent his jail time at the Snohomish County Jail. Dkt. 9, p. 2.

On November 28, 2017, the Tulalip Tribal Court found that Petitioner had violated the conditions of his probation and ordered Petitioner to serve 634 additional days of jail time. Dkt. 1, p. 3, 9(a) and Attach. 1, App. C. On June 18, 2018, the Tribal Court entered an Amended Order of Commitment reducing the additional jail time to 592 days. *Id*., Attach. 1, App. A; Dkt. 11, Exhs. B and C.

On September 12, 2018, Petitioner filed a habeas petition in the Tulalip Court of Appeals, in which he raised the same issues he raises here, *i.e.*, that he was denied counsel at his probation revocation hearing. Dkt. 1, p. 4, ¶¶ 11-12 and Attach. 2 (Tribal Court Appeal No. TUL-CV-AP-2018-0304 Findings of Fact, Conclusion of Law and Judgment). Petitioner was represented by counsel who is admitted to practice before the Tulalip Tribal Courts and the Courts of the State of Washington. Dkt. 11, Ex. I, p. 42. In a written opinion dated October 16, 2018, the Tulalip Court of Appeals determined:

1)       Petitioner was not informed of his right to counsel at the post-conviction

REPORT AND RECOMMENDATION
Page 2

        probation hearing, but was not prejudiced because the trial court was not required to appoint counsel and would not have appointed counsel at Petitioner's hearing (and the outcome of the hearing therefore would have been the same).

  2)    The trial court did not advise the Petitioner of his right to remain silent at his post-conviction probation revocation hearing, but was not required to do so. The Court of Appeals noted that no statements made in court by Petitioner were used against him in a criminal prosecution.

*Id.*, Attach. 2, pp. 8-9; Dkt. 11, Exhs. D-F. On October 19, 2018, Petitioner filed a Notice of Appeal in the Tulalip Tribal Court of Appeals. Dkt. 11, Exh. G. The Tulalip Tribal Court of Appeals accepted the appeal for review and entered a Scheduling Order on October 25, 2018. *Id.*, Exh. H.

On November 20, 2018, seven days after his opening brief was due in the Tulalip Tribal Court of Appeals, Petitioner filed his habeas petition in this Court, claiming that he was being unlawfully held in custody because he was "[n]ot informed of due process right to counsel" and "[n]ot provided with counsel" at his probation revocation hearing. Dkt. 1, p. 2, ¶ 9(a)(b).

Also on November 20, 2018, the Chief Justice of the Tulalip Tribal Court of Appeals directed the Clerk to ask Petitioner's counsel if he intended to file an opening brief and to convey that an extension of time would likely be granted (as the opening brief was to have been filed no later than November 13, 2018). Dkt. 11, Exh. I, p. 42. Counsel chose not to file additional pleadings, but instead stated Petitioner would rely on "previously filed authority." *Id.*

On December 18, 2018, Petitioner was released from custody and at that time, the Tulalip Indian Tribes acknowledged Petitioner had fully satisfied the requirements of his judgment and released him from further obligation. Dkt. 11, Exh. J.

On January 9, 2019, Petitioner's appeal in the Tulalip Tribal Court of Appeals was dismissed for failure to file a written brief in support of his position. Dkt. 11, Exh. I, p. 43

REPORT AND RECOMMENDATION
Page 3

("[R]eference to Trial Court briefs does not constitute a 'filing' of an appellate brief…. *Herman v. Confederated Colville Tribes*, 3 CCAR 65(2)(1996)).

## STANDARD OF REVIEW

Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2241. However, 25 U.S.C. § 1303, which is part of Title I of the Indian Civil Rights Act of 1968 ("ICRA"), provides "[t]he privilege of the writ of habeas corpus … to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." *See also, Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 51 (1978); *Tavares v. Whitehouse*, 851 F.3d 863, 870 (9th Cir. 2017). As previously noted, Petitioner is a member of the Tulalip Indian Tribe, the offense to which he plead guilty occurred against another member within the boundaries of the Tulalip Reservation, and at the time he filed his federal habeas petition, he was detained pursuant to a tribal court order. "Habeas claims brought under the Indian Civil Rights Act, 25 U.S.C. § 1303, are most similar to habeas actions arising under 28 U.S.C. § 2241," § 1303's "federal law analogue." *Kelsey v. Pope*, 809 F.3d 849, 854 (6th Cir. 2016), *cert. denied sub nom. Kelsey v. Bailey*, ⎯⎯ U.S. ⎯⎯, 137 S.Ct. 183, 196 L.Ed.2d 150 (2016).[2]

## DISCUSSION

**A.     There is No Case-in-Controversy**

The federal habeas statute gives jurisdiction to district courts to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also 28 U.S.C. § 2254(a). This language has been interpreted as requiring that the habeas petitioner be "in custody" under the

---

[2] Because the habeas petition is most similar to those habeas actions arising under 28 U.S.C. § 2241, a certificate of appealability is not included.

REPORT AND RECOMMENDATION
Page 4

conviction or sentence under attack at the time his petition is filed. *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

While physical custody is the prototypical form of detention contemplated to be challenged in a habeas action, detention within the meaning of § 1303 is somewhat more expansive than mere physical custody. *See Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 893–895 (2d. Cir. 1996) (requiring the petitioners to identify only "severe restraints on their liberty"). The Ninth Circuit, however, has recently interpreted the "detention" requirement under § 1303 in a more restrictive manner than the "in custody" requirement found in other federal habeas statutes. *See Tavares v. Whitehouse*, 851 F.3d 863, 876–77 (9th Cir. 2017) ("We view Congress's choice of 'detention' rather than 'custody' in § 1303 as a meaningful restriction on the scope of habeas jurisdiction under the ICRA."); *see also id* at 871–73 ("At the time Congress enacted the ICRA, 'detention' was generally understood to have a meaning distinct from and, indeed, narrower than 'custody.'"); *see also Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010); *Moore v. Nelson*, 270 F.3d 789, 791 (9th Cir. 2001) ("There is no reason to conclude that the requirement of 'detention' set forth in the Indian Civil Rights Act § 1303 is any more lenient than the requirement of 'custody' set forth in the other federal habeas statutes.").

Because Petitioner was incarcerated by reason of the parole revocation at the time his federal petition was filed, the "in custody" provision was satisfied. *See Carafas,* 391 U.S. at 238; *Maleng v. Cook*, 490 U.S. 488, 490–491 (1989) (per curiam). The question is whether his subsequent release caused the petition to be moot because it no longer represented a case or controversy under Article III, § 2, of the Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.... The parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank*

REPORT AND RECOMMENDATION
Page 5

*Corp.*, 494 U.S. 472, 477–478 (1990). Generally, an incarcerated person's challenge to the validity of a conviction satisfies the case-or-controversy requirement. However, after the sentence has expired and a petitioner is no longer in custody, some other concrete and continuing injury – some "collateral consequence" of the conviction – must exist in order for a Writ petitioner to maintain a suit. *See*, *e.g.*, *Carafas*, *supra*, 391 U.S. at 237-238; *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

Here, the challenged condition is a jail commitment imposed by the Tulalip Tribal Court for probation violations. Petitioner does not challenge his underlying domestic violence conviction. Petitioner also does not allege any actual or potential ongoing collateral impact suffered by him in connection with the Tribal Court's imposition of additional jail time. For example, he does not allege it is likely or even possible he could face other probation consequences in the future or that any additional jail time otherwise could be imposed upon him. On December 18, 2018, the Tulalip Indian Tribes acknowledged that Petitioner had fully satisfied the requirements of his judgment and released him from further obligation. Dkt. 11, Exh. J.

As Petitioner is no longer in custody and there is no actual or potential ongoing collateral impact suffered by him in connection with the Tribal Court judgment, his petition is moot as it no longer represents a case-in-controversy.

**B.   Exhaustion**

Petitioner filed his federal habeas petition while his appeal to the Tulalip Court of Appeals was pending. Dkt. 11, Exhs. G-H; Dkt. 1.

Individuals generally are required to exhaust their claims with the appropriate tribal court before turning to federal court, *see*, *e.g.*, *Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d

REPORT AND RECOMMENDATION
Page 6

948, 953 (9th Cir. 1998) (discussing exhaustion requirement), because "[t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16-17 (1987). Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the Supreme Court to insist that "the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity . . . to rectify any errors it may have made." *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 857 (1985).

The exhaustion requirement is not an inflexible one. *Rosebud Sioux Tribe of South Dakota v. Driving Hawk*, 534 F.2d 98 (8th Cir. 1976); *Janis v. Wilson*, 521 F.2d 724 (8th Cir. 1975); *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974), *cert. denied*, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975). It is imposed to further the congressional goals of preserving and strengthening Native American cultures by insuring that tribal institutions are not denied the opportunity to resolve tribal disputes or to make tribal policy. To determine in any particular case whether these goals will require exhaustion of tribal remedies, a court must first ascertain whether any meaningful tribal remedies exist, and, if so, whether exhaustion will in any way serve the purposes for which it is intended. If it will, the need to preserve and strengthen tribal institutions must be balanced against the need immediately to adjudicate alleged deprivations of individual rights. *Cf. O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973).

Here, Petitioner raised the same issues in the Tulalip Court of Appeals as he raises in his federal petition. Dkt. 1, p. 4, ¶¶ 11-12 and Attach. 2; pp. 8-9. After his initial appeal was denied, his notice of appeal for review was accepted and scheduled for briefing. Dkt. 11, Exhs. G and H. However, instead of pursuing his appeal in the Tulalip Court of Appeals, Petitioner chose to file

REPORT AND RECOMMENDATION
Page 7

his Section 2241 petition in this Court and allowed his appeal in the Tribal Court to be dismissed for failure to file an opening brief. Dkt. 1; Dkt. 11, Exh. I.

Because Petitioner has not shown either that exhaustion would have been futile or that the Tulalip Court of Appeals offered no adequate remedy, this Court should not reach the merits of his unexhausted claims and the petition may also be dismissed for failure to exhaust Tribal Court remedies.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **March 20, 2019.** The Clerk should note the matter for **March 22, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 27th day of February, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge